CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

05/07/2025

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

MURIEL NAZARETH, et al.,       )
    Plaintiffs,            )
                     )    Civil Action No. 5:24-cv-70390
v.                             )
                     )    MEMORANDUM OPINION
SHREE JAY JALARAM, LLC, et al.,  )
    Defendants.            )    By:   Joel C. Hoppe
                     )           United States Magistrate Judge

This matter is before the Court on the Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice ("Joint Mot. for Approval"), ECF No. 32, filed by Plaintiff Muriel Nazareth ("Nazareth") and Defendants Shree Jay Jalaram, LLC, d/b/a Super 8; Shree Sai Baba, LLC, d/b/a Super 8; and Vikas Gandhi, manager and owner of Super 8 (collectively, "Defendants"). The matter has been fully briefed, ECF Nos. 32, 33, and a hearing was held on April 28, 2025, ECF No. 37. For the reasons discussed below, the Court will grant the motion, approve the proposed Settlement Agreement, ECF No. 33-1, dismiss the case with prejudice, and retain jurisdiction over this matter for 120 days to enforce the Settlement Agreement.

I. Legal Framework

The Fair Labor Standards Act ("FLSA") establishes "employment rules concerning minimum wages, maximum hours, and overtime pay." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 4 (2011) (citing 29 U.S.C. §§ 201–219). Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981); *see also Ball v. Memphis Bar-B-Q Co., Inc.*, 228 F.3d 360, 363 (4th Cir. 2000). The FLSA's "provisions are mandatory and generally are not subject to bargaining, waiver, or modification by contract or settlement," *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014) (citing *Brooklyn*

1

*Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)), because it "would 'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate," *Barrentine*, 450 U.S. at 740 (quoting *Brooklyn Sav. Bank*, 324 U.S. at 707).

However, an FLSA claim can be settled or compromised in two circumstances: "(1) supervision by the secretary of Labor" under 29 U.S.C. § 216(c); or "(2) a judicial finding that the settlement reflects 'a reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Jones v. 573 LLC*, No. 7:22-cv-486, 2022 WL 17540269, at *1 (W.D. Va. Dec. 8, 2022) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). In the second circumstance, courts in the Fourth Circuit have generally "followed the guidelines for approval of an FLSA settlement set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)." *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014); *see, e.g.*, *Williams v. World Media Enters., Inc.*, No. 6:13-cv-10, 2013 WL 12434013, at *1–2 (W.D. Va. Sept. 30, 2013) (applying *Lynn's Food Stores*); *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, 352 F. Supp. 3d 499, 502 (M.D.N.C. 2018) (same); *Duprey*, 30 F. Supp. 3d at 407–08 (noting "the Fourth Circuit has not addressed the factors to be considered in approving FLSA settlements," but "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*" (cleaned up)).

Under *Lynn's Food Stores*, the court must determine that the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." 679 F.2d at 1355. This analysis involves three steps. *Duprey*, 30 F. Supp. 3d at 408; *Hendrix v. Mobilelink Va., LLC*, No. 2:16-cv-394, 2017 WL 2438067, at *1 (E.D. Va. May 26, 2017) (assessing FLSA settlement under three-step analysis). First, a district court must determine "whether there are FLSA issues that are actually in dispute." *Hendrix*, 2017 WL 2438067, at *1 (internal quotation marks

omitted). Second, a district court must determine whether the settlement is "a reasonable compromise over the issues." *Id.* (brackets omitted) (quoting *Lynn's Food Stores*, 679 F.2d at 1354). Third, the district court must determine the reasonableness of attorney's fees, if included in the agreement. *Id.* (citation omitted). These requirements "are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect his [or her] rights under the statute.'" *Duprey*, 30 F. Supp. 3d at 408 (other brackets omitted) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

## II.  Background

On June 17, 2024, Nazareth and her late husband, Melwyn Noronha,[1] filed this lawsuit against Defendants alleging violations of the FLSA, 29 U.S.C. § 201 *et seq.*, and the Virginia Overtime Wage Act, Va. Code §§ 40.1-29.2–29.3. *See* Compl. 5–7, ECF No. 1. Nazareth alleges that, during their time as Defendants' employees, she and Noronha were never paid overtime wages despite having to be "on-premises to provide 24/7 security and respond to motel guest issues late into the night and in the early morning hours." *Id.* at 4.

In February 2025, after "significant amounts of written discovery and back-and-forth negotiation[s]," Br. in Supp. Joint Mot. for Approval 3 ("Br. in Supp."), ECF No. 33, the parties reached a written agreement settling Nazareth's "FLSA Claims" and "Non-FLSA Claims," Br. in Supp., Ex. A, at 2–4, ECF No. 33-1 (Settlement Agreement). The Agreement states that "the Parties wish to settle the FLSA Lawsuit without compromise, but also agree to addition[al] settlement terms unrelated to the FLSA claims, for separate monetary consideration." *Id.* at 2. For Nazareth's "FLSA Claims," Defendants agree to pay $96,229.96. *Id.* at 3. This sum "is

---

[1] Noronha passed away, so Nazareth filed an unopposed motion to substitute herself as successor, ECF No. 28, which the Court granted, ECF No. 35 (citing Fed. R. Civ. P. 25(a)(1)). Accordingly, Nazareth is suing Defendants both in her individual capacity and in her capacity as Noronha's designated successor. For simplicity, this opinion generally refers to Nazareth alone.

comprised of: $17,985.77 as damages to Melwyn Noronha, $17,985.77 as liquidated damages to

Melwyn Noronha, $15,522.21 as wages of Muriel Nazareth, $15,522.21 as liquidated damages to

Muriel Nazareth, and separately, $29,214 to Plaintiffs' counsel as fees and costs." *Id.* at 3 n.1.

The parties represent that this is "100% of all damages and liquidated damages available under

the FLSA's two-year statute of limitations" and that Defendants are paying the attorney's fees

and costs "separately" from damages paid to Nazareth. *Id.* at 3. For Nazareth's "Non-FLSA

Claims," Defendants agree to pay $32,025.74 "as separate consideration." *Id.* at 4. The parties

represent that this is "100% of all damages and 100% of all available liquidated damages for the

third, and final year for which damages would be available under" the Virginia Overtime Wage

Act's three-year statute of limitations. *Id.* at 2. Unlike the settlement for the FLSA claims, the

parties agree to bear their own fees and costs. *Id.* at 9. All parties agree "that the settlements are

fair, just, and adequate," and they seek dismissal with prejudice. Joint Mot. for Approval 3.

### III.  Discussion

#### 1.    *Bona Fide Dispute*

To determine "whether a bona fide dispute exists as to a defendant's liability under the

FLSA, courts examine the pleadings . . . along with the representations and recitals in the

proposed settlement agreement." *Duprey*, 30 F. Supp. 3d at 408 (emphasis omitted) (citing

*Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08-cv-1310, 2009 WL 3094955, at *16 (E.D. Va.

Sept. 28, 2009)). The foundation of "a 'bona fide dispute exists when an employee makes a

claim that he or she is entitled to overtime payment.'" *Baust v. City of Va. Beach*, 574 F. Supp.

3d 358, 365 (E.D. Va. 2021) (quoting *Lomascolo*, 2009 WL 3094955, at *16). Here, Nazareth

and Noronha alleged that Defendants failed "to compensate [them] at the statutory rate of time

and one-half for the hours worked in excess of forty (40) hours per week." Compl. 6; *see also id.*

at 4–5. Defendants deny this allegation. *See* Answer 4–5, ECF No. 10. Defendants contend that

4

Nazareth and Noronha were "compensated for all hours worked in excess of 40 hours in any particular week . . . at a rate not less than that set forth by the overtime provisions of the FLSA," *id.* at 7, among other affirmative defenses, *id.* at 6–8. In the proposed Settlement Agreement, Defendants disclaim liability. Br. in Supp., Ex. A, at 10. Moreover, the parties note that they entered this settlement, in part, because of the "uncertainties of litigation." *Id.* at 11. During the hearing on the joint motion to approve this agreement, the parties explained that Noronha's death created challenges to Plaintiffs' ability to present evidence about the hours he worked, thereby causing a significant source of evidentiary uncertainty. The parties disagree about Nazareth's entitlement to overtime under FLSA, and acknowledge that the outcome of litigation is uncertain, making it a *bona fide* dispute. *Cf. Baust*, 574 F. Supp. 3d at 365 (finding that a bona fide dispute existed when "the parties disagree[d] as to whether Plaintiffs [were] entitled to the overtime pay"); *Smith v. David's Loft Clinical Programs, Inc.*, No. 21-cv-03241, 2022 WL 16553228, at *4 (D. Md. Oct. 31, 2022) ("This Court has found that a *bona fide* FLSA dispute exists where a defendant denies wrongdoing, disputes employee misclassification, or asserts an affirmative defense." (collecting cases)). Accordingly, a bona fide dispute over FLSA provisions exists between the parties.

## 2. *Fairness & Reasonableness*

To assess whether a proposed settlement agreement is fair and reasonable, courts evaluate several factors: (1) extent of discovery; (2) stage of proceedings, including the complexity, expense and likely duration of the litigation; (3) absence of fraud or collusion; (4) experience of the plaintiff's counsel; (5) probability of success on the merits; (6) amount of settlement in relation to the potential recovery. *Baust*, 574 F. Supp. 3d at 363. In addressing these factors, "the court keeps in mind the strong presumption in favor of finding a settlement fair." *Id.* at 365. In this case, these factors weigh in favor of finding a fair and reasonable settlement.

Factor (1) (extent of discovery), weighs in favor of the parties' settlement when they have had an opportunity "to narrow the issues in the case and adequately assess the likelihood of success at trial." *Baust*, 574 F. Supp. 3d at 365 (quoting *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1177 (S.D. Cal. 2016)); *see also Kirkpatrick*, 352 F. Supp. 3d at 503 (approving settlement agreement where "parties ha[d] engaged in significant discovery," which allowed them to "independently evaluate[] the likelihood of prevailing on their claims and defenses"); *Saman v. LBDP, Inc.*, No. DKC 12-1083, 2013 WL 2949047, at *4 (D. Md. June 13, 2013) (finding that the extent of discovery weighed in favor of settlement when "the parties had sufficient opportunity to '[] obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to trial in this case'") (quoting *Lomascolo*, 2009 WL 3094955, at *11)). Here, the parties represent that they have conducted "significant amounts of written discovery." Br. in Supp. 3. No evidence suggests otherwise. Although the parties had not conducted depositions, the exchange of written discovery appears to have allowed them to evaluate the strengths and weaknesses of their cases. *Baust*, 574 F. Supp. 3d at 365 (finding that the extent of discovery weighed in favor of approving settlement because "extensive discovery ha[d] already taken place," which "enabled the parties 'to narrow the issues in the case and adequately assess the likelihood of success at trial" (quoting *Selk*, 159 F. Supp. 3d at 1177)). Accordingly, the discovery conducted by the parties weighs in favor of finding that the proposed Settlement Agreement is fair and reasonable.

The key consideration for the factor (2) is whether "the process has allowed 'the [p]arties and their counsel to obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial.'" *Baust*, 574 F. Supp. 3d at 366 (brackets

in original) (quoting *Lomascolo*, 2009 WL 3094955, at \*12). Here, it has. This case had been pending for eight months, and trial was six months away when the parties notified the Court of the settlement. In addition to the significant written discovery, the process has allowed the parties to negotiate at arm's length and assess the risks and uncertainties of trial. Settling the case at this stage of the proceedings provides significant monetary relief, while avoiding the expenses associated with drafting and filing dispositive motions and the uncertainties of trial. *Rosales v. Rock Spring Contracting LLC*, No. 3:23-cv-407, 2024 WL 1417955, at \*6 (E.D. Va. Apr. 2, 2024) (holding that proposed settlement agreement was fair and reasonable when it provided significant monetary relief without the uncertainties of litigation). Defendants raised twenty-one affirmative defenses to FLSA liability, including all "defenses, protections and limitations" available to them under the FLSA. Answer 6–8. At the hearing on this matter, counsel for both parties acknowledged that Defendants deny both that they are a covered enterprise under the FLSA and that Nazareth was an individual engaged in interstate commerce, which is necessary for her to be covered under the FLSA. Without settlement, counsel would have needed to address complex FLSA issues, *Baust*, 574 F. Supp. 3d at 366 (noting that "should this matter proceed to trial, a jury would have to resolve multiple complex questions concerning the application of the FLSA"), which would increase the costs associated with litigation for both parties, *Bolyard v. Premier Chevrolet Buick GMC of Morgantown, Inc.*, No. 1:21-cv-80, 2023 WL 5673445, at \*2 (N.D. W. Va. Sept. 1, 2023) (finding that this factor weighed in favor of reasonableness because settlement would avoid motions practice and save the parties from further litigation expenses). Accordingly, the stage of proceedings weighs in favor of finding that the proposed Settlement Agreement is fair and reasonable.

For factor (3) (fraud or collusion), absent evidence to the contrary, "[t]here is a presumption that no fraud or collusion occurred between counsel." *Baust*, 574 F. Supp. 3d at

366. No such evidence exists here. The proposed settlement's terms are the product of "arm's length [negotiations] after significant amounts of written discovery and back-and-forth negotiation." Br. in Supp. 3. Accordingly, this factor weighs in favor of finding a fair and reasonable settlement.

For factor (4) (experience of plaintiff's counsel), Nazareth is represented by "competent and experienced counsel." Br. in Supp. 2. The Court is familiar with Plaintiffs' lead attorney's experience. He has been an attorney for nearly thirty years, and he litigates wage and hour claims in multiple jurisdictions. Nazareth's counsel negotiated an excellent settlement for her, under which she recovers 100% of back pay and 100% of liquidated damages under FLSA's two-year statute of limitations. In light of counsel's experience and the result achieved, this factor weighs in favor of finding a fair and reasonable settlement.

For factor (5) (probability of success on the merits), Defendants assert numerous affirmative defenses, which could impact Nazareth's probability of success on summary judgment or at trial. Defendants deny that they are a covered enterprise under the FLSA and that Nazareth and her husband were covered under the FLSA. Nazareth will have to overcome these defenses to recover anything. *See Patel*, 15 F. Supp. 3d at 656 (finding that this factor weighed "heavily in favor of finding the settlement fair" because "[p]laintiff had significant hurdles to overcome to affect any recovery under the FLSA."). Moreover, Nazareth's husband passed away. At the hearing, Nazareth's counsel acknowledged that Noronha was her chief witness and that his death would cause challenges in proving her claims, especially given the ambiguity in the record regarding the number of hours worked. Given that Nazareth is recovering 100% of back pay for herself and for her late husband, when Defendants disclaim liability and she could recover nothing, this factor weighs in favor of finding a fair and reasonable settlement.

8

For factor (6) (amount of settlement in relation to the potential recovery), under the FLSA, plaintiffs may recover "their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Because the statute of limitations for non-willful violations of FLSA is two years, *id.* § 255(a), a covered employer's exposure to liability for unpaid wages and liquidated damages is limited to the preceding two years. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 131–32 (1988) (noting that Congress enacted a two-year statute of limitations for claims under FLSA "to place a limit on employers' exposure to unanticipated contingent liabilities"). Here, Nazareth purportedly will recover 100% of overtime pay for the past two years and an amount equal to that in liquidated damages. Br. in Supp., Ex. A, at 2–4. This recovery is the maximum permitted for a non-willful violation of the FLSA. *See* 29 U.S.C. § 216(b). Given Defendants' defenses to FLSA liability, Nazareth could recover nothing if the case proceeded to trial. *Patel*, 15 F. Supp. 3d at 648 (concluding that $48,855.85 to settle claims under the FLSA was fair where "there could be potentially no recovery because the main employer . . . could conceivably not be covered by the FLSA"). Therefore, this factor weighs in favor of finding a fair and reasonable settlement. *Smith*, 2022 WL 16553228, at *6 (holding settlement amount reasonable where "the proposed settlement reflect[ed] a 100% recovery of the unpaid wages").

3.    *Attorney's Fees*

The court's final step in evaluating an FLSA settlement is to assess the amount of attorney's fees, if included. *Duprey*, 30 F. Supp. 3d at 411; *Hendrix*, 2017 WL 2438067, at *1–2. Under the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). This provision "contemplates that 'the wronged employee should receive his [or her] full wages plus [liquidated damages] without incurring any expense for legal fees or

9

costs.'" *Poulin v. Gen. Dynamics Shared Res., Inc.*, No. 3:09-cv-58, 2010 WL 1813497, at *1 (W.D. Va. May 5, 2010) (quoting *Maddix v. Dize*, 153 F.2d 274, 275–76 (4th Cir. 1946)). As such, the FLSA "'requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" *Id.* (quoting *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009)).

The Fourth Circuit has outlined a three-step process to calculate the reasonableness of an attorney's fees award in an FLSA action: "(1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs." *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 22 (4th Cir. 2019). While a joint agreement "'is due some deference,'" courts in this Circuit generally cross check the requested amount with the lodestar amount. *Baust*, 574 F. Supp. 3d at 364 (quoting *Davis v. BT Ams. Inc.*, No. 2:16-cv-206, 2017 WL 11506967, at *3 (E.D. Va. May 10, 2017)). The lodestar amount is the "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). To determine a reasonable hourly rate and number of hours, the court considers twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978) (adopting twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). A court need not

consider all twelve factors, only those relevant to the litigation. *Baust*, 574 F. Supp. 3d at 366 (citation omitted).

The Court first calculates the lodestar amount. The Settlement Agreement obligates Defendants to pay $29,214 in attorney's fees and costs "as a separate amount from the amounts paid to [Nazareth]." Br. in Supp., Ex. A, at 3. At the hearing on this matter, Plaintiffs' counsel represented the amount of his costs ($854) and his hours worked (71.3) on the FLSA claims. After deducting costs, his fees amounted to $28,360, resulting in an hourly rate of $397. "Cases brought under the FLSA are fact-intensive and 'requir[e] significant commitments of time and personnel to litigate.'" *Pope v. Quest Diagnostics Inc.*, No. 4:23-cv-80, 2024 WL 2494635, at *4 (E.D. Va. Mar. 21, 2024) (quoting *Gholston v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2022 WL 21842305, at *2 (E.D. Va. Nov. 2, 2022)). In light of the factors articulated in *Barber*—such as experience and skill of counsel, the amount in controversy and the amount obtained, and attorney's fees awarded in similar cases in this district—the Court finds $397 per hour reasonable. *Compton v. N. Central Va. Rests., Inc.*, No. 5:20-cv-73, 2022 WL 4008719, at *5 n.3 (W.D. Va. Sept. 2, 2022) (Cullen, J.) (finding attorney's fees reasonable and approving settlement under the FLSA where lead-counsel's "lodestar [was] based on their recently approved hourly billing rates of $500.00 . . . and $450.00").

Next, the Court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. *Baust*, 574 F. Supp. 3d at 364 (quoting *Randolph*, 780 F. App'x at 22). Claims are "'related'" when they arise from a "'common core of facts' . . . and are impossible to isolate from successful claims." *Larsen v. AR Res., Inc.*, 453 F. Supp. 3d 849, 855 (E.D. Va. 2020) (quoting *Abshire v. Walls*, 830 F.2d 1277, 1283 (4th Cir. 1987), *abrogated on other grounds by Green v. Bock Laundry Mach. Co.*, 490 U.S. 504 (1989)). Here, the parties resolved all FLSA and non-FLSA claims for separate sums. Br. in Supp., Ex. A, at 4–11. None of Plaintiffs' claims

11

were unsuccessful, so no adjustment to the fees is warranted. *See Gayhart v. Northampton Rests., Inc.*, No. 2:24-cv-488, 2025 WL 854904, at *7 (E.D. Va. Mar. 19, 2025) (making no adjustment when the settlement addressed all of the plaintiff's claims); *Ford v. Karpatheos, Inc.*, Civ. No. ELH-14-00824, 2015 WL 736809, at *14 (D. Md. Feb. 19, 2015) (concluding that there were no unsuccessful claims when the proposed settlement agreement "settled all of [Plaintiff's] claims, including those under the MWHL and the FLSA").

Finally, the Court must consider the reasonableness of the fee award in light of the success achieved for Nazareth. *Baust*, 574 F. Supp. 3d at 364, 370 (quoting *Randolph*, 780 F. App'x at 22). Nazareth received 100% of unpaid overtime wages and liquidated damages allowed under the FLSA's two-year limitations period. Nazareth had the burden to show that the FLSA violation was willful, thus entitling her to a third-year of unpaid overtime wages and liquidated damages. *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 359 (4th Cir. 2011). Recovering damages for the third year at trial would have been uncertain and Nazareth could have potentially been awarded less than the amount under the settlement, or nothing at all given Defendants' position that neither they nor Nazareth are covered by the FLSA's overtime provisions. *Pope*, 2024 WL 2494635, at *5 (concluding that the settlement agreement demonstrated a high degree of success and noting that the "plaintiff also avoided the risk of losing at trial and the increased attorney's fees and expenses trials necessitate"). In light of Nazareth's high degree of success, the Court finds the proposed attorney's fees and costs reasonable.

Accordingly, considering the relevant factors under *Barber*, the absence of unsuccessful claims, and the degree of success that Nazareth achieved, the Court finds that the $29,214 award for attorney's fees and costs is reasonable in this case.

    4.    *General Release of Liability*

"Part of the Court's review of FLSA settlements is 'to police unequal bargaining power between employees and employers.'" *Brockman v. Keystone Newport News, LLC*, No. 4:15-cv-74, 2018 WL 4956514, at \*5 (E.D. Va. Oct. 12, 2018) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). District courts thus scrutinize release provisions in an FLSA settlement agreement to ensure they are not overbroad. *Id.* (noting that, absent a "sufficient reason, overbroad liability releases are considered unreasonable in FLSA settlements"); *Rosales*, 2024 WL 1417955, at \*11. Courts have determined that a release is overbroad when it releases the defendant from liability for "claims that have no relationship whatsoever to wage-and-hour issues" alleged in the complaint. *Vazquez-Aguilar v. Gasca*, 513 F. Supp. 3d 675, 681 (E.D.N.C. 2021). When a release provision settles claims beyond the wage and hour issues asserted in the complaint, "[i]t is incumbent upon the parties to show whether Plaintiff has been 'independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due,' such that the settlement is reasonable." *Hendrix*, 2017 WL 2438067, at \*3 (quoting *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C10-5243, 2012 WL 6629608, at \*5 (N.D. Cal. Dec. 19, 2012)).

Here, the parties' Settlement Agreement contains a mutual release that "release[s] and forever discharge[s] each other from all claims in law, equity or otherwise, known and unknown, asserted or unasserted, matured or unmatured, which Defendants and Plaintiffs have or may have against one other as of the date of execution of this Agreement." Br. in Supp., Ex. A, at 5. The release provision is followed by a list of federal laws and state laws under which Plaintiffs release Defendants from liability, including a catch-all provision for "any other federal, state or local law, rule, regulation, or ordinance," and "any public policy, contract, tort, or common law." *Id.* at 5–7. Considering that the release includes claims unrelated to the wage and hour issues in the Complaint, the Court finds it overbroad.

13

However, the parties have demonstrated that Nazareth will be independently compensated for this overbroad release. In exchange for the release, Nazareth will receive $32,025.74 to settle all "Non-FLSA claims." At the hearing, Nazareth's counsel explained that other terms of the Settlement Agreement provided additional consideration for the general release. For example, the general release is mutual: it releases Nazareth's claims against Defendants, and it releases Defendants' claims against Nazareth. The Settlement Agreement also contains a mutual non-disparagement clause and neutral job-reference letter for Nazareth's benefit, Br. in Supp., Ex. A, at 10, which Nazareth found valuable. Because Nazareth will be independently compensated for the overbroad release, the release is reasonable. *Saman*, 2013 WL 2949047, at *5 (holding that, "[b]ecause the Agreement here provides separate compensation to . . . resolve her wrongful termination claim, the broad general release provision does not render the Agreement unreasonable as to Plaintiff's FLSA claims").

## IV.  Conclusion

For the foregoing reasons, the Court will grant the parties' joint motion for settlement approval, ECF No. 32, approve the Settlement Agreement, ECF No. 33-1, and dismiss the case with prejudice. The Court will retain jurisdiction for 120 days to enforce the Settlement Agreement. A separate order will enter.

ENTER: May 7, 2025

Joel C. Hoppe
United States Magistrate Judge